JOHN J. McCARTAN et al.

*v.*

THE INHABITANTS OF THE CITY OF TRENTON and ROBERT A. MONTGOMERY.

[Decided and Filed November 30th, 1898.]

1. An abutting owner in a city, who is liable to pay a part of the expense of improving the avenue on which his lot fronts, is entitled to the beneficial performance of an agreement made between the city and a contractor for the improvement of the avenue; and where the city authorities accept an imperfect or fraudulent performance of the contract such abutting owner has a standing in equity to ask a restraint against the payment of the contract price by the city until the contract be performed or the contractor be obliged to recover the price at law.

2. A slight variance in the performance from the precise terms of the contract, which does not materially or injuriously change the character of the

McCartan *v.* Trenton.

improvement, but rather betters it without increased cost, and which was made in good faith with the previous approval of the proper authorities of the city, is not a ground upon which a court of equity will restrain the payment of the contract price.

On bill and affidavits, answer and affidavits and order to show cause.

*Mr. William J. Walsh,* for the complainants.

*Mr. George W. Macpherson,* for the city of Trenton.

*Mr. William M. Lanning,* for Robert A. Montgomery.

GREY, V. C.

The bill in this case is filed by the complainants, who are abutting owners on Pennington avenue, in the outskirts of Trenton, and liable to pay part of the expense of an improvement of that avenue, made under a contract between the city of Trenton and one Robert A. Montgomery. The city of Trenton and Montgomery are made defendants. The improvement has been made, $4,260, part of the contract price, has been paid, and the bill seeks to restrain the payment of the remaining $8,000 to Montgomery, upon a charge that he has failed to comply with the terms of the contract, and that the city council, when notified of that failure, refused or neglected to investigate the facts or to take any steps to compel compliance.

There is no charge of fraudulent collusion between the city council or its employes and the contractor, but simply an allegation that the contractor furnished different material from that required by the contract, that the city authorities accepted and allowed this variance, and that the material so supplied was inferior to that named in the contract.

The ordinance under which the contract for the improvement was entered into, directed that the avenue be paved with " vitrified paving brick " except the portion lying between the rails of the passenger railway track. The advertised proposals for

McCartan *v.* Trenton.

construction invited bids for a pavement of "vitrified paving brick." The contract calls for paving "with wire-cut vitrified brick, No. 3, from the Savage Fire Brick Company," and that the contractor should "furnish said materials in strict conformity to the requirements of the specifications hereto annexed," which were part of the contract. The annexed specifications provide that "the brick must be hard-burned vitrified paving brick, the quality and shape to be satisfactory to the street committee and the engineer," with a provision for a test of samples to determine their quality.

The actions of the defendants which the bill challenges are the furnishing by the contractor for a part of the work, of a brick which was known as a "re-pressed brick," and which the complainants allege is of an inferior quality, and in another part a wire-cut brick, inferior in quality and lacking in weight. The complainants insist that wire-cut bricks have a rough side, which enables more grouting or filling of cement to be poured into the interstices of the laid pavement than can be done with a "re-pressed" brick, and they assert the former so grouted makes a superior pavement.

The complainants protested to the city council that the contractor "was not using the kind and quality of brick specified by the contract," and asked an investigation and a refusal of payment. They assert that the council gave them no opportunity to be heard and made no investigation, and reported and passed a resolution to pay the contractor, who has thus obtained $4,260 of the contract price. They pray that the contractor may be decreed to take up and relay the pavement with the material required by the contract and that the city may be restrained from paying the balance of the contract price, &c.

The rights in equity of an abutting owner who may be called upon to pay part of the expense of an improvement of this character have been defined in this state by the court of errors in the case of *Lodor* v. *McGovern et al., 3 Dick. Ch. Rep. 275.* Where, even if there be no fraud alleged, the work has not been properly done with respect to either materials or workmanship, the abutting owner who may be called upon to pay at the price

of perfect materials and work. has a standing in equity, in case
the city wrongfully accepts the inferior performance, to have it
restrained from making payment until the contractor shall have
established his right thereto in a court of law. *Lodor* v. *Mc-
Govern, supra.*

The question presented for determination here is whether
there is shown an acceptance of materials or work inferior to
the standard required by the contract and a purpose to pay for
them the contract price.

The city of Trenton files answer to the bill with accompany-
ing affidavits and denies the statement that there was no inquiry
touching the suggestions of the complainants' protest, and I
think the proofs conclusively show that the council caused an
investigation to be made. They aver that it was found that the
facts stated in the complainants' protest were untrue, and that
on examination it appeared that none but wire-cut brick of the
best quality from the Savage Fire Brick Company were being
used by the contractor. The complainants' petition or protest
states that they *are informed and believe* that the contractor is not
using the brick specified in the contract, and does not indicate
that the petitioners had any personal knowledge on the subject
which might suggest the propriety of their attendance to disclose it
when the investigation should be had. It does not request that
they be heard on the subject, nor does anything otherwise appear
which notified the city council that they desired a hearing, and
nowhere is there any showing that there was any denial of a
hearing. The action of the council and its committee appears
to have been fair and diligent in looking into the suggested
wrongdoing, and the proofs do not lead me to believe that any
injustice was done to the city or to the complainants in this
regard.

As to the charge that inferior bricks were used, or such as
varied from the character required by the contract, the defend-
ants insist and an examination of the affidavits and the contract
shows, that the bricks used were all " wire-cut vitrified bricks,"
and that " re-pressed " wire-cut brick is within the terms of the
contract, and not excluded by its terms. They insist and I think

McCartan v. Trenton.

the weight of the evidence, considering all of the affidavits on both sides, shows, that a " re-pressed " brick is heavier, contains more clay and absorbs less water than a brick not " re-pressed," that the object in laying a pavement is not to get a large quantity of cement between the courses, but only a sufficient quantity to make one course adhere firmly to the next, thus securing a uniformly even and strong surface for the whole pavement, that for this purpose the specifications required the grouting to be of pure cement, unmixed with sand, and that the use of a wire-cut re-pressed vitrified brick best attains this result.

The provisions of the contract do not exclude a " re-pressed " vitrified paving brick, and if there be any variance in quality between a " re-pressed " brick and one not " re-pressed," both being " wire-cut vitrified," the choice appears, by the specifications, to have been left to the street committee and engineer, who accepted the " re-pressed."

The weight of expert opinion in the affidavits goes decidedly to show that the re-pressing improves the quality of the brick, increases its density, weight and uniformity of size, and makes a more regularly even surface of pavement, when the bricks are laid.

The affidavits of the city engineer, who declares after many years' experience in his profession, in building brick-paved roads, " that the bricks used on Pennington avenue are fully as good as any vitrified brick ever laid in Trenton ; " of Mr. Roberts, a brickmaker of twenty years' experience, owning a lot on Pennington avenue, that the " re-pressed " bricks there used are heavier, more uniform in size, contain more clay, make a better pavement and endure more heavy traffic than those not " re-pressed," satisfy me that the quality criticised is not a vice, but a virtue.

There seems to be but one indication of a variance in the bricks furnished from those required by the contract. It appears that there was used for three hundred feet of the avenue, a wire-cut vitrified re-pressed paving brick, made by the Savage company, which was a No. 2 and not a No. 3, as named in the contract. It also appears that the No. 2 brick is heavier, contains more

clay, is more durable and more expensive than No. 3, and that before using the No. 2, instead of the No. 3, the city engineer and street committee approved and authorized the variance. It happened that the company whose bricks the contractor was obliged to supply was short of No. 3 and for the limited space named, No. 2 was substituted with the approval of the engineer and the street committee. This variance from the strict terms of the contract did not alter the character of the material to be used, nor did the change in number make a different style of pavement, or operate in any way to the disadvantage of the work, but rather to its betterment.

It must be remembered that the complainants are not parties to the contract. As abutting owners they are liable to pay a part of the price, and for this reason they are beneficially interested in its performance. If the action of the city officials and of the contractor is such that the contract is not substantially varied, and all of its benefits or greater benefits than those provided by it are secured, the complainants will have all they are entitled to and are threatened with no injury. They have no right to insist upon a "Chinese" performance of the contract. Where the evidence shows that the variance in the performance was not substantial, and has neither materially nor injuriously changed the character of the pavement contracted to be laid, and nothing appears to impugn the good faith of the transaction, it would be inequitable to tie up the payment of two-thirds of the contract price and force the contractor to the delay and expense of a suit at law. In the present case, if the contractor were so required, and in the law court showed performance as he has done here, and that the bricks furnished were within the strict terms of the contract, except as to a limited portion which varied only in the number, but that the No. 2 which was furnished was in every way better for the use in question than the No. 3 specified in the contract, and that this substitution of the better brick was made, after previous examination and approval, in good faith by the proper representatives of the city—if such a case was presented in a court of law, is there any doubt that the contractor should recover? That is the case exhibited here, and

the contractor, on such a showing, ought not to be subjected to the delay and expense of a suit at law.

I will advise that the order to show cause and the restraint be dismissed, with costs.